UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENGE LEMO GAHANO,

      Petitioner,

  v.

DANIEL M. RENAUD, *et al.*,

      Respondents.

Case No. C20-1094-MJP-MLP

REPORT AND RECOMMENDATION

### I. INTRODUCTION

Petitioner Denge Leme Gahano ("Petitioner") brings this 28 U.S.C. § 2241 habeas action to obtain release from U.S. Immigration and Customs Enforcement ("ICE") custody at the Northwest ICE Processing Center ("NWIPC") or a bond hearing. (Am. Pet. (Dkt. # 9).) Petitioner centrally alleges he is entitled to release because his detention by ICE has become indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) and that his second bond hearing violated his right to due process. (*See* Pet.'s Traverse (Dkt. # 47) at 7-11.) Respondents have moved to dismiss, arguing Petitioner has failed to show his detention is indefinite and that he is lawfully detained. (Resp.'s Mot. (Dkt. # 16) at 10-17.)

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Respondents' motion to dismiss (dkt. # 16) be GRANTED, Petitioner's amended habeas petition (dkt. # 9) be DENIED, and that this action be DISMISSED with prejudice.

## II. BACKGROUND

Petitioner is a native and citizen of Ethiopia, who was admitted to the United States as a refugee on September 17, 1991. (Dkt. # 16-4 at 8.) On November 13, 1992, he became a permanent resident of the United States, retroactive to September 17, 1991. (*Id.*) In July 2012, a jury in the State of Oregon found Petitioner guilty of multiple domestic violence-related charges involving his ex-wife and the use of a firearm. (Dkt. # 16-7 at 1-3.) On September 17, 2012, Petitioner was sentenced to five-years imprisonment based on his unlawful use of a weapon constituting domestic violence, with lesser sentences to run consecutively on his remaining charges. (Dkt. # 16-9 at 2.)

On March 13, 2017, Petitioner was released to ICE custody, served with a notice to appear for removal proceedings, and transferred to the NWIPC. (Dkt. # 16-4 at 8.) At that time, Petitioner was charged with removability as a non-citizen convicted of an aggravated felony crime of violence under 8 U.S.C. §§ 1101(a)(43)(F), as defined by 18 U.S.C. § 16(a), and 1227(a)(2)(A)(iii), based upon his 2012 Oregon convictions. (*Id.*) On March 14, 2017, an immigration judge ("IJ") ordered no bond and mandatory detention under 8 U.S.C. § 1226(c). (Dkt. # 16-10 at 1.)

On October 31, 2017, the immigration court held a first bond hearing, pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), because Petitioner's detention under § 1226(c) exceeded six months. (Dkt. # 16-2 at 3-10.) On December 29, 2017, an IJ issued a

written decision finding Petitioner presented a danger to the community and a flight risk, and that he should not be released on bond. (Dkt. # 16-2 at 7-10.) Petitioner filed an appeal of the IJ's bond decision, which the Board of Immigration Appeals ("BIA") dismissed as untimely on February 2, 2018. (Dkt. # 16-2 at 2.) On March 27, 2018, an IJ ordered Petitioner removed to Ethiopia and denied his requests for relief from removal. (Dkt. # 16-4 at 19-20.)

On April 20, 2018, Petitioner filed a *pro se* appeal of the IJ's decision sustaining his charge of removability with the BIA. (Dkt. # 16-4 at 2-6.) Petitioner additionally filed a motion to reopen and remand based on allegedly new evidence supporting his relief application. (Dkt. # 16-4 at 5-6.) On September 17, 2018, the BIA issued Petitioner a final order of removal, dismissed his appeal, and denied his motion to reopen and remand. (*Id.* at 2-6.)

On October 15, 2018, Petitioner filed a petition for review of the BIA's removal determination to the Ninth Circuit, with a motion for stay, and the Ninth Circuit granted Petitioner a temporary stay of removal. (Dkt. # 16-1 at ¶ 14; *see Gahano v. Barr*, No. 18-72796 (9th Cir.), Dkt. # 1.) On October 18, 2018, Petitioner filed a motion for reconsideration with the BIA. (Dkt. # 16-5 at 2-3.) On August 2, 2019, the Ninth Circuit's stay of removal became a formal stay. (*See Gahano v. Barr*, No. 18-72796 (9th Cir.), Dkt. # 20.) On January 24, 2019, the BIA denied Petitioner's motion for reconsideration. (Dkt. # 16-5 at 2-3.)

During his removal proceedings, Petitioner additionally sought to readjust his status with a waiver of inadmissibility under 8 U.S.C. § 1182(h) pursuant to *Negrete-Ramirez v. Holder*, 741 F.3d 1047 (9th Cir. 2014). Petitioner's son filed an I-130 visa petition seeking an adjustment of Petitioner's status in September 2017. (Dkt. 39-1 at 1.) However, Petitioner's I-130 visa petition was not approved until November 2, 2018, after both the immigration court and BIA denied Petitioner's requests for relief. (Dkt. 16-5 at 2-3.) In addition, the BIA specifically noted in its

1   January 24, 2019 decision that there was no evidence demonstrating extreme hardship to a
2   qualifying relative for readjustment of Petitioner's status pursuant to a § 1182(h) waiver. (*Id.* at
3   3.)
4           On February 19, 2019, Petitioner filed a second petition for review of the BIA's decision
5   on his motion for reconsideration to the Ninth Circuit with a request for a stay of removal. (Dkt.
6   # 16-1 at ¶ 16; *see Gahano v. Barr*, No. 19-70403 (9th Cir.), Dkt. # 1.) On May 8, 2019, the
7   immigration court held a second bond hearing, pursuant to the preliminary injunction in *Aleman*
8   *Gonzalez v. Sessions*, 325 F.R.D. 616 (N.D. Cal. 2018), because Petitioner's detention under 8
9   U.S.C. § 1231(a) exceeded six months. (Dkt. # 16-3 at 4.) On June 6, 2019, the IJ issued a
10  written decision finding DHS met its burden of establishing Petitioner's release would present a
11  danger to the community and, therefore, he should not be released on bond. (Dkt. # 16-3 at 7-9.)
12          On August 2, 2019, the Ninth Circuit consolidated Petitioner's petitions for review and
13  appointed him pro bono counsel in both cases. (*See Gahano v. Barr*, No. 18-72796 (9th Cir.),
14  Dkt. # 20; *Gahano v. Barr*, No. 19-70403 (9th Cir.), Dkt. # 9.) Petitioner appealed the IJ's May
15  8, 2019 order denying his request for bond, and on December 30, 2019, the BIA dismissed his
16  appeal. (Dkt. # 16-3 at 2-3.) On January 20, 2020, Petitioner filed a motion to reconsider the
17  BIA's December 30, 2019, decision dismissing his appeal, which the BIA denied on May 29,
18  2020. (Dkt. # 16-1 at ¶¶ 19-20.)
19          On July 15, 2020, Petitioner, proceeding *pro se*, filed his first habeas petition and his first
20  motion seeking an emergency stay of removal in this Court. (Dkt. ## 1-2.) The Court denied
21  Petitioner's first motion because he failed to demonstrate he satisfied the factors required to
22  obtain a stay. (Dkt. # 5.) On August 6, 2020, Petitioner filed a second motion seeking an
23  emergency stay of removal and an amended habeas petition. (Dkt. # 7; Am. Pet.) Petitioner's

REPORT AND RECOMMENDATION - 4

1  amended habeas petition generally alleges his detention without bond is unlawful because: (1) he
2  had been held without bond or release for over 40 months; (2) his convictions were in violation
3  of the Sixth Amendment pursuant to *Ramos v. Lousiana*, 140 S.Ct. 1390 (2020); (3) he is
4  innocent of his crimes of conviction; (4) the IJ violated his due process rights by considering an
5  "out-of-court perjured letter" in finding he was a danger to the community at his second bond
6  hearing; and (5) his inability to readjust his status through his approved relative petition violates
7  his constitutional rights. (*See id.* at 2-3, 5-8.) The Court denied Petitioner's second motion for a
8  stay because Petitioner failed to support his request for relief with substantive argument. (Dkt.
9  # 11.) On August 10, 2020, Petitioner filed a third motion for a stay of removal. (Dkt. # 12.) The
10 Court denied that request as well because Petitioner was subject to a stay of removal by the
11 Ninth Circuit at that time. (Dkt. # 15.)

12     On August 10, 2020, the Ninth Circuit held oral argument on Petitioner's consolidated
13 petitions for review. (*See Gahano v. Barr*, No. 18-72796 (9th Cir.), Dkt. # 60; *Gahano v. Barr*,
14 No. 19-70403 (9th Cir.), Dkt. # 50.) On August 17, 2020, Respondents filed their return
15 memorandum and motion to dismiss asserting Petitioner is not entitled to habeas relief because
16 his detention has not violated due process. (Dkt. # 16.) On September 10, 2020, the Ninth Circuit
17 Court of Appeals denied Petitioner's petitions for review of his final order of removal. (Dkt.
18 # 27; *see Gahano v. Barr*, No. 18-72796 (9th Cir.), Dkt. # 61; *Gahano v. Barr*, No. 19-70403
19 (9th Cir.), Dkt. # 51.) On October 16, 2020, Petitioner filed a response to the Respondent's return
20 memorandum. (Dkt. # 22.) On November 2, 2020, the Ninth Circuit issued a mandate
21 terminating his stay of removal. (Dkt. # 27; *see Gahano v. Barr*, No. 18-72796 (9th Cir.), Dkt.
22 # 64; *Gahano v. Barr*, No. 19-70403 (9th Cir.), Dkt. # 54.) On November 9, 2020, Petitioner
23 filed a fourth motion for stay of removal to this Court. (Dkt. # 25.)

REPORT AND RECOMMENDATION - 5

On November 2, 2020, ICE presented Petitioner with a blank application for Ethiopian travel documents and asked him to complete and sign it. (Dkt. # 51-1 at ¶ 6.) Petitioner refused to fill out the application or sign it that day. (*Id.*) Petitioner was then presented with the application again on November 3, 2020, November 18, 2020, and on January 8, 2021, but continued to refuse to sign or fill out the application. (Dkt. # 31 at 1-2; Dkt. # 51-1 at ¶¶ 7, 10, 12.) On January 22, 2021, Petitioner signed the application for travel documents. (Dkt. # 51-1 at ¶ 17.)

On January 26, 2021, the Court appointed Petitioner pro bono counsel based on Petitioner's habeas petition potentially raising novel issues related to the application of *Ramos* to Petitioner's case. (Dkt. # 33.) On March 1, 2021, Petitioner's pro bono counsel filed a declaration stating that upon investigation, they determined the jury's verdict on Petitioner's underlying convictions was unanimous for all counts where the jury decided to convict. (*See* dkt. # 40 at 1-2.) As such, Petitioner's pro bono counsel did not present any argument relating to the validity of Petitioner's detention on account of *Ramos*. (*See* dkt. # 39 at 2.) On March 12, 2021, the Court denied Petitioner's fourth motion for stay of removal because Petitioner's pro bono counsel conceded that he was unaware of a legal basis for a stay of removal at that time. (Dkt. ## 39, 42.) On March 17, 2021, upon Petitioner's pro bono counsel's request (dkt. # 44), the Court authorized a traverse on Petitioner's habeas petition addressing his continued detention without bond in light of the current political circumstances in Ethiopia and whether Respondents would be able to remove Petitioner in the reasonably foreseeable future under *Zadvyadas*. (Dkt. # 46.)

On April 1, 2021, Petitioner filed a motion to reopen with a request for an emergency stay of removal with the BIA. (Dkt. # 48-2 at 1-19.) Petitioner's motion to reopen also alleged

REPORT AND RECOMMENDATION - 6

changed conditions in Ethiopia arising from a recent civil war that commenced in November 2020. (Dkt # 48-2 at 13.) On April 9, 2021, Petitioner filed his traverse (Pet.'s Traverse (dkt. # 47)) and on April 16, 2021, Respondent filed a reply (dkt. # 51).

On April 21, 2021, Respondents filed a status report noting that the Ethiopian embassy confirmed Petitioner's Ethiopian citizenship and that it would issue a travel document. (Dkt. # 53 at 1.) This Court held a status hearing on May 3, 2021, concerning the status of Petitioner's travel documents. (Dkt. # 56.) On May 5, 2021, Respondents filed an additional status report noting that Petitioner's travel documents were issued on May 3, 2021, and that he was subject to be removed in June 2021. (Dkt. # 57 at 2.) On June 2, 2021, the BIA denied Petitioner's emergency motion to stay his removal, however his motion to reopen continues to remain pending with the BIA. (Dkt. # 62-4 at 1.)

On June 7, 2021, Petitioner filed a fifth emergency stay of removal requesting that a stay be entered until 30 days after the issuance of any adverse decision by the BIA on his pending motion to reopen to allow him to seek judicial review and a stay of removal from the Ninth Circuit. (Dkt. # 62 at 1-3.) On June 21, 2021, the Court denied Petitioner's fifth motion for stay of removal because the Court found it did not have jurisdiction to authorize a stay under 8 U.S.C. § 1252(g), Petitioner's claims did not fall under the protection of the Suspension Clause, and Petitioner failed to satisfy the *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) factors. (Dkt. # 66.)

On June 23, 2021, Respondents filed a status report that stated ICE was in the process of planning new charter flights to Ethiopia for July and August 2021, and exploring whether Petitioner might be authorized to be removed on a commercial flight, after Petitioner's June 2021 flight was canceled. (Dkt. # 67.)

REPORT AND RECOMMENDATION - 7

### III. DISCUSSION

Because Petitioner's pro bono counsel has conceded the jury's verdict on Petitioner's underlying convictions was unanimous for all counts where the jury decided to convict (*see* dkt. # 40) the Court finds there are no issues relating to the validity of Petitioner's detention on account of *Ramos* as raised in his amended habeas petition. Furthermore, Petitioner's remaining arguments as noted in his amended habeas petition generally challenge the propriety of his removal order, which this Court does not have jurisdiction to consider. *See* 8 U.S.C. § 1252(a)(5); *Aden v. Nielsen*, 409 F.Supp.3d 998, 1005 (W.D. Wash. 2019) ("When a claim by [a noncitizen], however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, [a district court's review of the claim] is prohibited by section 1252(a)(5)."). Consequently, the Court will first examine Petitioner's indefinite detention claim under *Zadvydas* before examining Petitioner's due process claim pertaining to his second bond hearing and request for an additional bond hearing.

### A. Indefinite Detention Claim

First, Petitioner argues his removal is not reasonably foreseeable pursuant to *Zadvydas* due to the worsening political situation in Ethiopia. (Pet.'s Traverse at 5-9.) Title 8 U.S.C. § 1231 governs the detention and release of noncitizens, such as Petitioner, who have been ordered removed and deportable under 8 U.S.C. § 1227(a)(2)(A)(iii). Under § 1231(a), the U.S. Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period."[1] 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). Though the removal period typically lasts

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

90 days, it may be suspended and extended, where "the [non-citizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [non-citizen's] departure or conspires or acts to prevent the [non-citizen's] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including Petitioner, or to release them on supervision. 8 U.S.C. § 1231(a)(6).

While § 1231(a)(6) authorizes ICE to detain Petitioner, ICE cannot do so indefinitely. In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In this case, the removal period began on the date Petitioner's removal order became administratively final. *See* 8 U.S.C. § 1231(a)(2)(B)(i). On this point, the parties agree Petitioner's removal order became administratively final on November 2, 2020, upon the Ninth Circuit's issuance of the mandate on its dismissal of Petitioner's consolidated petitions. (Dkt. # 51 at 2; *see Gahano v. Barr*, No. 18-72796 (9th Cir.), Dkt. # 64; *Gahano v. Barr*, No. 19-70403

REPORT AND RECOMMENDATION - 9

(9th Cir.), Dkt. # 54.) But as noted in the record, between November 2, 2020 and January 22, 2021, Petitioner refused to sign an application to apply for travel documents from the Ethiopian embassy. (*See* dkt. # 31 at 1-2; dkt. # 43 at 2; *see also* dkt. # 51-3 at 1.) Thus, Petitioner's 90-day removal period did not begin to run until January 22, 2021, when Petitioner signed his application for travel documents (*see* dkt. # 51-1 at ¶ 17) and expired on April 22, 2021. *See* 8 U.S.C. § 1231(a)(1)(C). As a result, Petitioner's detention remains "presumptively reasonable" until July 22, 2021. *See Zadvydas*, 533 U.S. at 701.

Even if Petitioner were not within the "presumptively reasonable" period, Petitioner has failed to demonstrate his removal is not significantly likely to occur in the reasonably foreseeable future.[2] There is no evidence Ethiopia will refuse to repatriate him. Petitioner was issued travel documents by the Ethiopian government on May 3, 2021. (*See* dkt. # 59 at ¶ 5; Dkt # 59-1 at 1-2.) Although Respondents have not offered a specific date when they expect Petitioner to be removed, the Ninth Circuit has held that uncertainty as to when removal will occur does not establish that detention is indefinite. *Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008) ("That the detention did not have a certain end date does not change the analysis."); *see also Zadvydas*, 533 U.S. at 702. The Ninth Circuit has further explained that detention becomes indefinite where the country designated in the removal order refuses to accept the noncitizen or if removal is barred by the laws of this country. *Diouf I*, 542 F.3d at 1233. Neither situation is present in the instant matter as there are no diplomatic barriers to Petitioner's removal to Ethiopia and ICE represents it has removed noncitizens to Ethiopia as recently as January 2021.

---

[2] Petitioner argues his refusal to apply for travel documents did not suspend or extend the removal period because he "quite reasonabl[y] refus[ed] to sign a blank form" from the Ethiopian government (Pet.'s Traverse at 5-6) and therefore, the "presumptively reasonable" period expired on April 22, 2021. (Pet.'s Traverse at 7 n.4.) However, based on the record before the Court, it appears Petitioner was merely requested to fill out the blank travel document application and sign it. (Dkt. # 51-1 at 2-6.)

REPORT AND RECOMMENDATION - 10

(*See* dkt. # 59 at ¶ 8.) Respondents have also recently confirmed that ICE is in the process of planning new charter flights to Ethiopia for July and August 2021 and exploring whether Petitioner might be authorized to be removed on a commercial flight. (*See* dkt. # 67 at 1-2; dkt. # 67-1 at ¶¶ 6-7.)

Accordingly, the Court concludes Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. Therefore, the Court recommends Petitioner's habeas petition be denied on this claim.

**B.     Due Process Claim**

Next, Petitioner argues his May 8, 2019 bond hearing violated his due process rights because a letter from Petitioner's ex-wife, in addition to a letter from his ex-wife's daughter, were both considered by the IJ. (Am. Pet. at 8; Pet.'s Traverse at 9-11.) As such, Petitioner argues his due process rights were violated because the IJ did not allow him to subpoena his ex-wife or her daughter to appear for cross-examination before considering either document. (*Id.*)

Though the Court has jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), the Court cannot second guess an IJ's discretionary judgment. *See* 8 U.S.C. § 1226(e). In determining whether the government has met its burden of proof that detention is warranted for a non-citizen subject to prolonged detention, an IJ is required to determine whether the government has presented substantial evidence that the non-citizen is "highly probable" or "reasonably certain" to present a future risk of flight or danger to the community. *See Singh*, 638 F.3d at 1204.

REPORT AND RECOMMENDATION - 11

In this case, the IJ found the government met its burden of proof that detention was warranted because Petitioner presents a danger to the community. (Dkt. # 16-3 at 8.) Though the IJ noted both letters from Petitioner's ex-wife and her daughter in her summary of the evidence concerning Petitioner's dangerousness (*see id.* at 7-8), the IJ explicitly denied Petitioner bond based on the seriousness of his convictions. (*Id.* at 8 ("[D]ue to the dangerousness of the criminal activity that Respondent was convicted of and the fact that he takes no ownership over the seriousness of his conduct, the court finds . . . he is a danger to the community and therefore no bond is appropriate.")). Moreover, as noted by the IJ, the letters from Petitioner's ex-wife and ex-wife's daughter merely corroborated Petitioner's underlying domestic violence-related convictions. (*Id.* at 7 ("Respondent's now ex-wife expressed that she fears respondent will kill her and detailed several incidents of harm in a declaration.")). In affirming the IJ's bond decision, the BIA further noted the effect of Petitioner's underlying criminal convictions on his bond determination, specifically noting:

> [I]n reaching the decision that the respondent should not be at liberty during the pendency of removal proceedings, the [IJ] properly considered the respondent's criminal history which included a conviction for two counts of unlawful use of a weapon constituting domestic violence, three counts of menacing – pointing a firearm, four counts of recklessly endangering another person, one count of menacing, and one count of coercion with a firearm constituting domestic violence; he was sentenced to 60 months in prison.

(*Id.* at 2.) Accordingly, the Court concludes Petitioner's due process rights were not violated by the IJ's consideration of the letters from Petitioner's ex-wife and her daughter at his May 8, 2019 bond hearing.

### C. Additional Bond Hearing

Petitioner's amended habeas petition alternatively requests a bond hearing. (Am. Pet. at 10.) The Ninth Circuit has held that noncitizens subject to prolonged detention under

REPORT AND RECOMMENDATION - 12

§ 1231(a)(6) are entitled to a bond hearing if removal is not imminent. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011); *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 765-66 (9th Cir. 2020) (reaffirming *Diouf II*'s holding).

As previously noted, on May 8, 2019, Petitioner received a bond hearing pursuant to *Aleman*. *See Flores Tejada v. Godfrey*, 954 F.3d 1245, 1250 (9th Cir. 2020) (finding that *Diouf II* requires only one bond hearing and not multiple); *see also Mizanur v. ICE Field Office Director*, C20-1479-RSM-BAT, 2020 WL 8083461, at *2 (W.D. Wash. Dec. 14, 2020), *report and recommendation adopted*, 2021 WL 75262 (W.D. Wash. Jan. 8, 2021). Furthermore, Petitioner has failed to demonstrate his removal is not imminent under *Zadvydas*. Based on the most current information before the Court, ICE has a valid travel document for Petitioner and is in the process of scheduling a charter flight in July or August 2021. (*See* dkt. # 67 at 1-2; Dkt. # 67-1 at ¶¶ 6-7.) Accordingly, the Court concludes Petitioner is not entitled to an additional bond hearing pursuant to *Diouf II*.

## IV.   CONCLUSION

The Court recommends that Respondents' motion to dismiss (dkt. # 16) be GRANTED, Petitioner's amended habeas petition (dkt. # 9) be DENIED, and this action be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed

REPORT AND RECOMMENDATION - 13

within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 30, 2021**.

Dated this 7th day of July, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14